GOSTORF v. THE STATE.

LIQUOR:    *Selling without license:* "*Home Bitters,*" etc.

    The sale, without license, not only of ardent, vinous, malt and fermented liquors, but also of all compounds or preparations thereof, is prohibited by the license act of March 8, 1879. [This case finds "Home Bitters," and "Home Sanative Cordial," among the inhibited compounds. See the evidence for their ingredients.—REP.]

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

STATEMENT.

This was an indictment of the appellant for selling, without license, compounds of ardent liquor known as Home Bitters and Home Sanative Cordial.

Upon trial before the court, Brown, a witness for the State, testified that he had purchased from the appellant, in Pulaski County, a bottle of each of the compounds mentioned in the indictment and had drunk some of both. Each contained alcohol. The medicines in them made them unpleasant to him. He liked whisky; thought enough of these compounds would make a man drunk if they did not make him sick, but could not say what would be enough to make him drunk.

The defendant admitted that he had no license to sell liquor.

The defendant introduced the following testimony:

Dr. R. G. Jennings says: " I am a practicing physician and live in Little Rock. I have practiced medicine since 1856. I graduated in March, 1856, at the Maine Medical School. I am familiar with the effects on the human

system of the drugs generally used in medicine. I have seen Home Stomach Bitters and Home Sanative Cordial. I purchased a bottle of each at Hughes' drug store, in Little Rock. It was made by the St. Louis Wine Company."

(The following formulas, which were proved to be the formulas by which the medicines in question were compounded, were shown to witness):

" *Formula of the Home Stomach Bitters.*

"Extract Calisaya Bark, ½ lb. to gallon,.........v℥.
Extract Columbo Root, ½ lb. to gallon,.........i i j ℥.
Extract Gentian Root, ¼ lb. to gallon,.........i i j ℥.
Extract Anise Seed, ⅛ lb. to gallon...........℥.
Extract Cardamon Seed, ⅛ lb. to gallon,........v ℥.
Extract Chamomile Flrs., (Rom.), ⅛ lb. to gal. i j ℥.
Extract Chamomile Flrs., (Germ.), ⅛ lb. to gal. i j ℥.
Extract Orange Peel, ¼ lb. to gallon,............i v ℥.
'Extract Lemon Peel, ¼ lb. to gallon,............i v ℥.
Wild Cherry Bark, 1 lb. to gallon,..............i i j ℥.
Simple Syrup.............................i j ℥.
Cologne Spirits, 60 per cent.... ................½ gallon.
Distilled Water, sufficient to make 1 gallon.

"Mix and let stand in a warm place eight or ten days before bottling. Shake well once or twice a day."

" *Formula of the Home Sanative Cordial.*

" Formula..........................Spts. Exts.
Calisaya Bark, ½ ℔. to gallon...................v ℥.
Columbo Root, ½ ℔. to gallon...................i j ℥.
Gentian Root, ¼ ℔. to gallon...................i j ℥.
Anise Seed, ⅛ ℔. to gallon....................j ℥.
Cardamon Seed, ⅛ ℔. to gallon...................v ℥.
Pyro-Phosphate Iron..........................80 grs.
Wild Cherry Bark, 1 ℔. to gallon...............i v ℥.
Chamomile Flrs. (Rom.), ⅛ ℔. to gallon.........i i i ℥.

Chamomile Flrs. (Germ.), ⅛ ℔. to gallon.......i i i ℥.
Orange Peel, ½ ℔. to gallon......................v i i i ℥.
Lemon Peel, ½ ℔. to gallon......................v i i i ℥.
Simple Syrup........................................i v ℥.
Alcoholic Spirits, 30 per cent..................O. i v.
Distilled Water sufficient to make 1 gallon."

The witness then proceeded:

"I have examined both with reference to the foregoing formulas, and think they correspond with the formulas. All the articles used in the formulas are used as medicines, and go into a large number of prescriptions. Calisaya bark is used as a tonic. Columbo and gentian are tonics, but not so strong as calisaya. But they are also stomachics, as are also the anise and cardamon. Pyro-phosphate of iron and cherry bark are tonics, excellent ones, and so are the chamomile flowers; they, however, are more soothing, and have certain emetic properties. The other ingredients, viz, orange peel, lemon and simple syrup, are pleasant adjuvants as well as carminatives. The alcoholic spirit is simply an addition for the preservation of the compound, to keep it from undergoing fermentation and change. The actual difference between the two compounds is slight, scarcely anything, with the exception of the iron, which is in the cordial and not in the bitters. Cologne spirits would be alcohol diluted with water. Quinine and cinchonidia are made from calisaya bark. It is very bitter, and is largely used in making febrifuges. These medicines can not be kept without alcohol. It is necessary to extract the virtues from the bark and to preserve them. It requires a certain amount to preserve them, and where sugar is used it requires more. I can not conceive how any one could use these articles as a beverage. If taken largely, it would be an emetic. The cherry bark and chamomile, either with or without iron, would be depressing. I consider it strictly a medicine. I have visited

the factory about a month ago. I went at the request of the Wine Company. I inspected thoroughly all the articles in bulk and in the process of manufacture. I found the calisaya to be of very superior character, and all the articles were tested before buying. The methods used by the company in manufacturing these articles are the same used by chemists and druggists. It is done carefully. They have a competent chemist in charge. I found him competent in all points. Everything was as neat and clean as could be under the circumstances.

"The process for mixing is done by machinery and with accuracy, agitation being kept up until the ingredients are mixed before they are bottled. The process of manufacture is as follows: They have large vats, and the chemicals are mixed there, and they use the extracts to make these articles. According to these formulas, they use to make a gallon of bitters of the following articles: Extract of calisaya, of a strength of one-half pound of bark to the gallon of solvent, and of that they take five ounces; of columbo root, of the strength of one-half pound to the gallon of solvent, three ounces; of gentian root, of the strength of one-fourth pound to the gallon of solvent, two ounces; of anise seed, of the strength of one-eighth pound to the gallon of solvent, one ounce; of cardamon seed, of the strength of one-eighth pound to the gallon of solvent, five ounces; of wild cherry bark, of the strength of one pound to the gallon of solvent, four ounces; of Roman and German chamomile flowers, each of the strength of one-eighth pound to the gallon of solvent, of each three ounces; of orange and lemon peel, each of the strength of one-fourth pound to the gallon of solvent, four ounces each; of simple syrup, seven ounces; of alcoholic or cologne spirits, four pints; water sufficient to make the gallon. In the cordial, eighty grains of pyro-phosphate of iron are added to the formula.

"My statement as a physician is, that these compounds are medicinal and a medicine, and not beverages. I think they are useful, and would not hesitate to prescribe them in a case where I found that formula useful."

*Cross-examined.*—" One tablespoonful to one and a-half is a dose. I should not prescribe these articles for a drink of whisky. They are not appropriate for that purpose. They are tonics. If the syrup and water were taken out, they could not be taken at all. They would corrode the stomach. The spirits used are proof spirits. A man can take almost anything in quantity sufficient to make him drunk. But I think too much of these compounds would have such a tonic effect that it would not be the same effect that spirits would have. If a man were to take a large amount he would be sick for several days. He would reel and stagger. He would do that if he was bilious. A man could get drunk if he takes a large amount of any kind of spirits, even of lager beer. I think it would make a man tight if he could keep it down, but it would make him sick. It would have an unpleasant effect. In the factory they place a large amount of the bark and other articles in vats, and make an extract with water or spirits, as the case may require. And in the preparation of these articles they use the extracts. I think there is from twenty-one to twenty-four per cent. of alcohol in these compounds. It is there for preservation. All tinctures are made in that way. Water and saccharine matter will ferment, or it will ferment without the saccharine matter. The columbo will ferment." (Here the witness was shown the formula of Fitzpatrick's Bitters, as laid down in *Foster v. State, 36 Ark., p. 258*, and continued):

" I see a considerable difference between the formula of these compounds and of Fitzpatrick's Bitters. In Fitzpatrick's Bitters, there is no cherry bark, no iron, no chamomile. I think these compounds are a better tonic than

Fitzpatrick's Bitters. I think there are more spirits in Fitzpatrick's Bitters than in these compounds. In Fitzpatrick's Bitters there are sixteen ounces out of twenty-one seven-eighth ounces of cologne spirits, such spirits being seventy-four per cent. proof. This would make the proportion of spirits double that in these compounds.

"Fluid extracts are preparations made by certain formula, and are stronger than the tinctures. They are kept in the drug stores. The formula would show that Fitzpatrick's Bitters are made at any time the materials are all ready. The spirits used in Fitzpatrick's Bitters are seventy-four per cent. proof, and in these it is half diluted. There are 128 ounces in a gallon. In a gallon of Fitzpatrick's Bitters there are ninety-six ounces of cologne spirits, seventy-four per cent. proof, and in these there are sixty-four ounces, sixty per cent proof. There are eight drachms in an ounce. Calisaya is better than cinchona. In Home Bitters there are five ounces of calisaya extract, and one and one-half ounces of the same extract in Fitzpatrick's Bitters, and all things else in the same proportion. In the Home Sanative Cordial, iron makes it a very fine tonic and stomachic."

There was a large amount of testimony, in substance, the same as the above.

The defendant asked the following declarations of law, which were by the court refused:

First—" As has been shown by the testimony, and is well and generally known, alcohol is a necessary ingredient in the preparation of many valuable medicines. It is not the intention of the law to prohibit the sale of medicines without license because they contain a proportion of alcohol. The fact therefore that the articles sold by defendant contained alcohol, is not of itself evidence that the sale of such articles without license was unlawful."

Second—" The name given an article is no criterion of

the article itself. Calling a liquor, whether medicated or not, a tonic or bitters would not make its sale lawful. On the other hand, calling a medicine tonics or bitters, would not make it less a medicine, nor make its sale unlawful. In considering this case, therefore, the court will give no effect to the name of the articles sold by defendant."

Third—"The true question is whether the articles sold by defendant were really medicines or not. If the court find that the articles sold by him were both in fact medicines, and only intended and suitable for use as such, and that the quantity of alcohol therein contained, was no more than was necessary to extract and preserve the medicinal qualities of the drugs used in their manufacture, it will find the defendant not guilty."

Fourth—"If the court find that neither of the articles sold by the defendant was used, or was such as could be used as a beverage and substitute for ardent liquors, it will find defendant not guilty."

Fifth—"If the court find from the testimony that alcohol is a necessary ingredient in many medicines, that the essential active principles in their effect on the human system, of the articles sold by defendant, is derived from the drugs used in their manufacture; that such drugs are of medicinal value and are used as medicines by physicians; that the effects of the compounds as a whole are medicinal; that the proportion of alcohol used in their preparation is only so much as is necessary to extract and preserve the medicinal qualities of the drugs and give them their proper effect; that the proportion of alcohol used is less than in tinctures and other medicines commonly prepared for use as medicines, and is less than is contained in spirits sold and used as beverages, and that the articles sold are useful as medicines, it will be justified in finding such articles are medicines, and in that case should find defendant not guilty."

Sixth—" The court declares that the articles sold by the defendant were medicines, and will find defendant not guilty."

The court modified the first and fourth declarations asked by defendant, and gave them as follows:

1. It was not the intention of the law to prohibit the sale of medicines without license because they contain a proportion of alcohol. The fact, therefore, that the articles sold by the defendant contained alcohol is not of itself evidence that the sale of such articles without license was unlawful.

4. If the court find from the evidence that neither of the articles sold by the defendant was used, or such as could be used as a beverage and substitute for ardent liquors, it will find defendant not guilty."

And the court of its own motion gave the following declarations of law:

1. "If the inhibitory language of the act of March 8, 1879, on which this indictment was founded, was confined to " ardent, vinous, malt or fermented liquors," a reasonable interpretation of the act might well limit its operation to such compounds or preparations as were merely pretexts to evade the law by making sale of the prohibited articles under the thin disguise of medicated syrup instead of sugar for sweetening. But the language goes further and expressly, in so many words, forbids the sale of " any compound or preparations thereof, commonly called tonics, bitters or medicated liquors," and this full enumeration is emphasized by being repeated five times in this act.

2. "The Legislature, under its police power, is authorized to inhibit or regulate by license whatever is harmful in itself or harmful in its indirect influence upon the community. The main object, doubtless, of the act, was to prevent the sale of such mixtures as were to be sold and

used as beverages and substitutes for ardent liquors.  But the Legislature might well· have anticipated the frauds easily perpetrated upon the law, and the consequent evasions thereof, if the State were required in each case to give the component parts and relative ·proportions of the tonics and bitters sold.

"Hence, instead of making such· distinction between beverages and medicines as might easily have been done in a few words if desired, the legislative will is expressed by a direct and positive inhibition of " all compounds and preparations thereof," save only that limitation contained in the descriptive clause following, that they be such as are " commonly called tonics, bitters or medicated liquors." Compounds and preparations of ardent liquors, etc., made and sold as these obnoxious "tonics, bitters and medicated liquors," are within the operation of the prohibitory clause of the act, irrespective of the fact that they may be useful as medicinss and not so desirable as beverages as if the medicinal properties were omitted."

The defendant was found guilty, fined two hundred dollars, and appealed.

*B. C. Brown,* for appellant :

Contends that upon the testimony, the sale of the articles mentioned without license, was, and is not prohibited by the act of March 8, 1879, or by any law of the State. That said articles were useful only as medicines, and not fitted for use as beverages or intoxicants.  Nor was their preparation an attempt to evade the law.  The act intended to " *regulate*," not to prevent, nor restrain the sale of *intoxicants*.  These articles do not fall within the *intention* of the Legislature, which must govern, although such construction may seem contrary to the letter of the statute.  *Potter's Dwarris, Rule 5, 123 ; People v. N. Y. C. R. Co., 13 N.*

Gostorf v. The State.

*Y., 81; Holmes v. Carlley, 31 N. Y., 290; 1 Kent Com., 462; People v. Utica Ins. Co. 15 John., 381; Jackson v. Collins, 3 Cowen, 89; Bacon's Abs. Title, Stat. 1; Vattel Bank, 2, ch. 17, sec. 285; Brown v. Blougher, 14 Peters, 178; Hart v. Cleiss, 8 John., 44.*

The legislative intention was to prohibit the sale of such "tonics," "bitters," "medicated liquors," etc., as are prepared for use as beverages, of which alcohol is the chief ingredient, and which are used for their alcoholic effect.

The proportion of alcohol is not always the proper criterion, as laudanum, cologne and bay-rum contain large proportions of alcohol.

Comments on *Foster v. State, 36 Ark., 258,* which was a case where more than one-half of the bitters was alcohol. In this case only about twenty per cent. of alcohol, only enough to preserve it. "In medicine alcohol is invaluable as a solvent of the active principles of many substances that are insoluble in water, and would soon decompose in aqueous solution." *Encyclopedia Britannica, vol. 1, p. 469.*

*Attorney-General Moore,* for the State:

See the formulæ of the preparations and apply the test as laid down in *Foster v. State, 36 Ark., 258,* and both the "bitters" and "cordial" fall within the provisions of the act of *March 8, 1879.*

OPINION.

SMITH, J. Appellant was indicted for selling, without license, compounds of ardent liquors, known as Home Bitters and Home Sanative Cordial. Waiving a jury, he was tried by the court, convicted and fined.

It was admitted he had no license. And it was proved that he had sold a bottle of each of the above-mentioned preparations, in Pulaski County, within twelve months next before the finding of the indictment; and that each of

the preparations contained about twenty-two and one-half per cent. of alcohol, in combination with some bitter extracts and flavoring substances.

The declarations of law by the court were remarkably clear, and will be found in the statement by the Reporter, along with so much of the evidence as is necessary to elucidate the case.

There can be no doubt that the preparations sold were tonics, bitters and stimulants. The case falls directly within both the letter and spirit of the license act of March 8, 1879, as construed in *Foster v. The State, 36 Ark., 258.* That statute prohibits the sale, without license, not only of ardent, vinous, malt and fermented liquors, but also of all compounds or preparations thereof, in the form of tonics, bitters or medicated liquors.

Affirmed.